# United States Court of Appeals
## *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Susan E. Bindler**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

April 10, 2026

W. Bevis Schock
7777 Bonhomme Avenue
Saint Louis, MO  63105-0000

RE:  25-1668  Lindell Briscoe, et al v. St. Louis County, et al

Dear Counsel:

The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc must be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. Except as provided by Rule 25(a)(2)(iii) of the Federal Rules of Appellate Procedure, no grace period for mailing is allowed. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

Susan E. Bindler
Clerk of Court

DNS

Enclosure(s)

cc:     Clerk, U.S. District Court, Eastern District of Missouri
        Lawrence L. Pratt
        Erich Vieth

District Court/Agency Case Number(s):   4:24-cv-00440-MTS

# United States Court of Appeals
## *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Susan E. Bindler**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

April 10, 2026

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

    RE:  25-1668  Lindell Briscoe, et al v. St. Louis County, et al

Dear Sir or Madam:

    A published opinion was filed today in the above case.

    Counsel who presented argument on behalf of the appellants and appeared on the brief was W. Bevis Schock, of Saint Louis, MO. The following attorney(s) appeared on the appellant brief;  Erich Vieth, of Saint Louis, MO.

    Counsel who presented argument on behalf of the appellees and appeared on the brief was Lawrence L. Pratt, of Saint Louis, MO.

    The judge who heard the case in the district court was Honorable Matthew T. Schelp.

    If you have any questions concerning this case, please call this office.

                 Susan E. Bindler
                 Clerk of Court

DNS

Enclosure(s)

cc:  MO Lawyers Weekly

    District Court/Agency Case Number(s):  4:24-cv-00440-MTS

# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1668

_____

Lindell Briscoe, individually; Brittany Arlesia Shamily, individually and as next friend of her minor children; B.M.C.; B.A.S.; B.L.B.D.; B.R.C.B.; B.A.B.

*Plaintiffs - Appellants*

v.

St. Louis County; Joseph Percich, in his individual capacity

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 15, 2026
Filed: April 10, 2026

_____

Before SMITH, BENTON, and ERICKSON, Circuit Judges.

_____

SMITH, Circuit Judge.

The St. Louis County Police Department's Tactical Operations Unit (colloquially known as a SWAT team) executed a search warrant at a home in connection with an armed carjacking. As it turns out, the family living at the home had no connection to the carjacking. The family—Lindell Briscoe, Brittany Arlesia, and their five minor children (collectively, Appellants)—sued St. Louis County and Detective Joseph Percich, the author of the search warrant affidavit. The complaint

alleged claims related to the search warrant affidavit, the execution of the search warrant, and St. Louis County's use of its SWAT team to execute search warrants. They also alleged that St. Louis County violated Missouri's Sunshine Law. The district court[1] granted St. Louis County and Detective Percich's motion to dismiss Appellants' claims. Appellants appeal. We affirm.

## I. *Background*

One morning, two teenagers leaving a Waffle House restaurant got into their vehicle, a black Dodge Charger. Before they could drive away, two carjackers ordered them out of the Charger at gunpoint. The teenagers complied, and the carjackers drove away in the Charger. Four other individuals who arrived at Waffle House with the carjackers also drove away in two separate vehicles.

St. Louis County police officers responded to the incident and began to investigate. A friend of the victims informed the officers that his Apple AirPods were in the back seat of the stolen vehicle. AirPods have a feature that enables them to be located electronically through the Find My application. Using that feature, the officers believed that the AirPods could be located at 1022 Wylin Court. Accordingly, Detective Percich applied for a search warrant. He submitted the following affidavit with the application:

> 1. This affiant, Detective Joseph Percich . . . has been a St. Louis County Police Officer for over sixteen years, the last eleven assigned as a detective to the Bureau of Crimes Against Persons. Your affiant also serves as a credentialed Task Force Officer for the Federal Bureau of Investigation, serving on the Violent Crimes Safe Streets Task Force. Your affiant has led numerous complex investigations into various homicides, assaults, police officer-involved shootings and other violent crimes. Your affiant has had vast specialized training regarding the investigation of violent crime.

---

[1]The Honorable Matthew T. Schelp, United States District Judge for the Eastern District of Missouri.

-2-

2. On Friday, May 26, 2023, at approximately 6:26 AM, police officers . . . responded to the Waffle House, located at 3154 Telegraph Road in St. Louis County, for a report of a First Degree Robbery/Vehicle Hijacking.

3. The victims . . . reported they were at the restaurant to eat breakfast with friends prior to the last day of school at Oakville High School. While the victims ate, a black male in a light blue hooded sweatshirt entered the restaurant and sate [sic] at the counter. The subject then returned to two vehicles in the parking lot. Those vehicles were described as a white Kia passenger car and a silver Chevrolet passenger car.

4. After breakfast, the victims exited the business and entered the vehicle, described as a 2021 Dodge Charger, black in color. The victims were approached by two masked black male suspects. It was reported both suspects displayed firearms, with at least one equipped with a drum magazine. Both suspects provided verbal directives to the victims to exit the vehicle. The suspects entered the vehicle and departed the scene.

5. Video surveillance footage revealed the suspects arrived in the aforementioned silver and white passenger cars. One suspect was dressed in a red hooded sweatshirt. The suspects take possession of the vehicle and flee.

6. A witness and friend to the victims . . . reported his Apple AirPods were inside the Dodge Charger at the time of the vehicle hijacking. [He] assisted investigators by tracking the AirPods using Apple's "Find My" application. After a short time, the stolen AirPods were determined to be at the residence of 1022 Wylin Court, St. Louis, Missouri 63135.

7. Surveillance was initiated at 1022 Wylin Court.

8. At 8:10 AM . . . patrol officers . . . located the stolen Dodge Charger. The vehicle was occupied by a driver and four passengers. The patrol officers attempted to initiate a felony stop . . . however, the driver fled at a high speed. A vehicle pursuit was initiated.

9. The pursuit ultimately culminated in the 1700 block of Foley Drive. Two males abandoned the vehicle and fled on foot. Two females also abandoned the vehicle but were immediately taken into custody. The unoccupied stolen Dodge Charger then struck the front of a marked police vehicle.

10. Police officers initiated a foot chase of the two male suspects. Both were taken into custody . . . . In the area along the path of the foot chase, police officers located two pistols with drum magazines and a satchel containing the victim's property.

11. The driver [and passenger] of the Dodge Charger w[ere] positively identified . . . . [The passenger] was dressed in a red sweatsuit. It appeared as if [the driver] disrobed himself of a gray hooded sweatshirt at the time of the foot chase. The article of clothing was seized as evidence. The female passengers were [also] identified . . . .

12. Detectives conducted a[n] . . . interview of [one of the females]. She reported being presented [sic] with [the other female] and the above [mentioned] males, along with two other unknown males, near the St. Louis Riverfront throughout the overnight hours. The group then went to White Castle for food which was verified by a receipt in [the female's] possession. She reported the group, occupying a white Kia sedan, then proceeded to Waffle House. [She] reported the male in the red sweatshirt . . . and the male in the blue sweatshirt, whose identity remained unknown, approached the victims and relieved them of the Dodge Charger.

13. [The female] said she remained in the Kia sedan. The occupants of the Kia followed behind the Dodge Charger until reaching a gas station in/near the City of Normandy. While at the gas station, [she] reported the suspects discarded several backpacks from the victim's Dodge Charger into a green trash can . . . . Based upon the description of the trash can, detectives believed the group stopped at a BP gas station.

14. After departing the gas station, the group separated. [The female] entered the Dodge Charger . . . . [The other female] and the subject in the red sweatshirt . . . were [also] passengers.

-4-

15. Detectives responded to the BP gas station . . . and located three backpacks containing property associated with the robbery victims. . . . Video surveillance footage revealed three vehicles, the Dodge Charger, white Kia and silver Chevrolet sedan arrived and departed in tandem. The occupants of the vehicles appeared to communicate with one another. The vehicles were last seen departing the parking lot northbound on S. Florissant Road, toward Woodstock Road.

16. As of writing, information gleaned from Apple's "Find My" application revealed the stolen Apple AirPods were still at 1022 Wylin Court. The address in question is located a short distance from the intersection of S. Florissant Road and Woodstock Road.

17. The vehicle hijacking . . . occurred through the use or threatened use of deadly force during which the suspects displayed firearms in a crime of violence. At least one suspect remains unidentified and detectives have reason to believe that person resides at or frequents 1022 Wylin Court. As a result, detectives seek authorization to serve this search warrant in a "no knock" manner, if deemed appropriate by personnel assigned to the St. Louis County Police Department's Tactical Operations Unit.

18. Through training and experience, your affiant is aware evidence of criminal offenses is frequently retained by the suspect and stored within his/her residence.

19. Because this affidavit is being submitted for the limited purpose of securing a search warrant, your affiant has not included each and every fact known to me concerning this investigation. Rather, only the facts that are believed to be necessary to establish probable cause are stated above.

R. Doc. 1-4, at 1–3.

Based on Detective Percich's warrant application and affidavit, a St. Louis County judge issued a no-knock search warrant authorizing officers to search the residence at 1022 Wylin Court for "firearms, ammunition, holsters, firearm related

-5-

material, cellular devices, receipts, documentations, writings, clothing, video recording devices" and "stolen/personal property belonging to the victims." R. Doc. 1-5.

A SWAT team executed the search warrant. According to Appellants, the officers "exited their military style van" wearing "full combat regalia" and "were heavily armed with military style weapons." R. Doc. 1, ¶¶ 117–19. They "approached the house's two exterior doors with shields in front of them and their weapons drawn." *Id.* ¶ 119. The officers knocked on the front door three times and shouted that they were officers executing a search warrant. They ordered the occupants to come to the front door immediately. After about 25 seconds of knocking and shouting with no response, the officers used a battering ram to break through Appellants' front door.

Arlesia was in the house with three of her children. After breaking through the door, the officers trained their guns on Arlesia. Wearing only her underwear, she became understandably alarmed and asked what was going on. She told the officers that she had a three-month-old baby in the house.

Briscoe and the other two children were outside of the home in his semi-truck cab. The officers pointed firearms at Briscoe and demanded that he and the children exit the truck.

The officers detained the entire family outside on the sidewalk for about 30 minutes while they conducted the residential search. The baby was left crying in the home for four minutes before one of the officers brought the baby outside. Appellants allege that the officers made them stand and told them that they could not sit down when they requested.

Before the SWAT team arrived, the house was "in a clean [and] orderly condition." *Id.* ¶ 141. During the execution of the search warrant, the officers

-6-

"punched a hole larger than a basketball in the bedroom drywall," "ransacked the drawers and turned them over," and "left the house in disarray." *Id.* ¶ 143.

The officers eventually found the AirPods. They were not in house but in the street in front of the house. The officers concluded that Appellants had nothing to do with the Waffle House carjacking. Unfortunately for Appellants, by that point they had already been traumatized and embarrassed by the ordeal.

Appellants sued St. Louis County and Detective Percich in his individual capacity. The six-count complaint alleged an unreasonable search in violation of the Fourth Amendment based on an inaccurate affidavit, i.e., a *Franks*[2] violation (Count I); an unreasonable use of force based on the use of a SWAT team (Count II); an unreasonable use of force based on the SWAT team's conduct (Count III); an unreasonable seizure (Count IV); an unconstitutional SWAT team raid policy (Count V); and a violation of Missouri's Sunshine Law (Count VI). Counts I through IV were brought against Detective Percich, and Counts V and VI were brought against St. Louis County. Counts I through V were brought pursuant to 42 U.S.C. § 1983, and Count VI was brought pursuant to Missouri law.

St. Louis County and Detective Percich moved to dismiss all of Appellants' claims. The district court granted their motion. First, it concluded that Detective Percich is entitled to qualified immunity for Counts I through III. Then, it concluded that Count IV fails to state a claim for relief because Appellants' seizure during the search of their home was not unreasonable under the facts alleged. Next, the district court explained that Count V fails because Appellants failed to identify an unconstitutional policy or custom and because a municipal liability claim cannot survive unless individual liability is found. None was found here. Finally, the district court declined to exercise supplemental jurisdiction over Count VI, Appellants' only state law claim.

---

[2]*Franks v. Delaware*, 438 U.S. 154 (1978).

Appellants appeal the district court's judgment.

## II. *Discussion*

On appeal, Appellants argue that the district court erred in dismissing their claims. We review de novo the district court's decision to dismiss Counts I through V for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009). We will accept Appellants' factual allegations as true. *Id.* "Because the decision to exercise supplemental jurisdiction over the remaining state law claim[] is discretionary under § 1367 and not jurisdictional," we will review the district court's dismissal of Count VI for an abuse of discretion. *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011).

## A. Franks *Violation*

Appellants concede that whether Detective Percich committed a *Franks* violation is a critical factor for their claims' survival. Accordingly, we address this issue first.

The Fourth Amendment protects against unreasonable searches and seizures. *See* U.S. Const. amend. IV. "For a search to be reasonable, the government generally must obtain a warrant supported by probable cause before 'physically intruding on constitutionally protected areas'" like homes. *United States v. Wolff*, 830 F.3d 755, 758 (8th Cir. 2016) (quoting *Florida v. Jardines*, 569 U.S. 1, 11 (2013)). However, as the Supreme Court explained in *Franks*, an officer violates an individual's Fourth Amendment rights if he or she "knowingly and intentionally, or with reckless disregard for the truth" includes false statements in the warrant affidavit. 438 U.S. at 155; *see also Bagby v. Brondhaver*, 98 F.3d 1096, 1098 (8th Cir. 1996). To establish a *Franks* violation, a plaintiff must show:

> (1) the affiant officer knowingly and intentionally, or with reckless disregard for the truth, included a false or misleading statement in, or omitted information from, the affidavit in support of the warrant; and

-8-

(2) the affidavit would not establish probable cause if the allegedly false information is ignored or the omitted information is supplemented.

*United States v. Cowling*, 648 F.3d 690, 695 (8th Cir. 2011) (citation modified).

We have explained that the showing of deliberate or reckless falsehood required to establish a *Franks* violation is "not lightly met." *United States v. Butler*, 594 F.3d 955, 961 (8th Cir. 2010) (quoting *United States v. Wajda*, 810 F.2d 754, 759 (8th Cir. 1987)).

> The test for determining whether an affiant's statements were made with reckless disregard for the truth is whether, after viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.

*Id.* "Allegations of negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171.

Here, Appellants argue that Detective Percich included both material misstatements and omissions in the affidavit supporting the search warrant. Specifically, Appellants contend that Detective Percich's affidavit (1) misstated the location of the stolen AirPods, which were actually found in the street in front of the house located at 1022 Wylin Court and not in the house; (2) omitted the unidentified suspect's connection to 1022 Wylin Court; (3) omitted information indicating the imprecision of the data displayed on the Find My application; (4) omitted the time that officers began surveilling 1022 Wylin Court; (5) and omitted relevant details from the interviewed suspect's interview. Appellants assert that these misstatements and omissions are material matters that show deliberate falsity or reckless disregard for the truth. We disagree.

Appellants' have not sufficiently alleged that Detective Percich "knowingly and intentionally" or "recklessly" disregarded the truth. To be sure, Appellants' allegations of misstatements and omissions demonstrate that the affidavit could have

-9-

been more thorough and precise. Detective Percich's affidavit could have included more information. He essentially concedes as much in number 19 of the affidavit. *See* R. Doc. 1-4, at 3 ("Because this affidavit is being submitted for the limited purpose of securing a search warrant, *your affiant has not included each and every fact known to me concerning this investigation*. Rather, only the facts that are believed to be necessary to establish probable cause are stated above." (emphasis added)). But Detective Percich's failure to include additional details is not enough to establish a *Franks* violation unless the absence of those details shows reckless disregard for the truth.

Detective Percich was tasked with investigating an armed carjacking, a serious offense. He had been informed that the suspects used firearms, at least one of which was equipped with a drum magazine. He also had information that the stolen car was seen a short distance away from, and driving toward, 1022 Wylin Court; that one of the suspects was still at large; and that the stolen AirPods appeared to be at 1022 Wylin Court.

Appellants argue that Detective Percich materially misstated a fact in the warrant affidavit when he stated that the stolen AirPods were at the residence of 1022 Wylin Court. They assert that Detective Percich, instead, should have been more precise about the limited precision of the Find My application. For example, Appellants suggest that Detective Percich could have included a screenshot from the Find My application; explained that the AirPods were on the street in front of 1022 Wylin Court; explained that the he could not say with certainty whether the AirPods were inside of 1022 Wylin Court; or explained that "[t]he accuracy of the [Find My] app depends on the configuration of adjoining buildings, the location of cell towers, Bluetooth connectivity, WiFi and GPS networks, and other factors." Appellants' Br. 24.

While Detective Percich could have included these more detailed explanations, the Fourth Amendment did not require it. "[A]ffidavits 'are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical

-10-

requirements of elaborate specificity . . . have no proper place in this area.'" *Illinois v. Gates*, 462 U.S. 213, 235 (1983) (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)). "Even if the . . . affidavit was imperfect, perfection is not required for a search warrant to survive appellate review." *United States v. Juneau*, 73 F.4th 607, 616 (8th Cir. 2023). Appellants do not make any allegations in their complaint establishing that Detective Percich doubted that the AirPods were at 1022 Wylin Court.

Appellants also argue that Detective Percich made a material misstatement when he stated that evidence of the crime, including firearms, was located at 1022 Wylin Court. However, Appellants do not make any allegations establishing that Detective Percich doubted the accuracy of this fact. In the warrant affidavit, Detective Percich explained that he "has led numerous complex investigations into various . . . violent crimes" and that he "has had vast specialized training regarding the investigation of violent crime." R. Doc. 1-4, at 1. He explained that based on his training and experience, he knew that criminals typically retain evidence at their residence. And while Detective Percich did not know whether 1022 Wylin Court was a suspect's residence, he believed that the stolen AirPods were there. This belief contributed to a conclusion of probable cause to search the residence. AirPods being a valuable personal electronic device, it would not be a natural assumption that they would be on the street. "Probable cause requires only a showing of fair probability, not hard certainties." *United States v. Hudspeth*, 525 F.3d 667, 676 (8th Cir. 2008).

Additionally, Appellants argue that Detective Percich omitted material information regarding law enforcement's surveillance of 1022 Wylin Court. Specifically, Appellants assert that Detective Percich should have stated whether surveillance of their home began before or after the suspects were seen on surveillance footage at the BP gas station. They argue that if officers began surveillance of their home before the suspects were seen at the gas station, then the officers would have known that none of the suspects were at 1022 Wylin Court. The surveilling officers would have seen that none of the suspects entered the home. Alternatively, Appellants argue that if the surveillance began after the suspects were

-11-

seen at the gas station, then officers could not be certain whether the missing suspect was at 1022 Wylin Court because a suspect could have entered the home before surveillance began.

Appellants, however, misread the warrant affidavit. Detective Percich's affidavit never asserted that all six of the suspects were seen together on the BP surveillance footage. Instead, he only stated that the surveillance footage showed "three vehicles, the Dodge Charger, white Kia and silver Chevrolet sedan arrived [at the gas station] and departed in tandem" and that "[t]he occupants of the vehicles appeared to communicate with one another." R. Doc. 1-4, at 2–3. The inception of the surveillance of 1022 Wylin Court was not indispensable to a probable cause determination when the affidavit was filed. The gas station surveillance footage showed all three vehicles but did not show all the suspects. It stands to reason that the AirPods arrived at Wylin Court before officers began surveilling the residence. The unknown suspect could have done so as well. Thus, supplementing the affidavit with the surveillance inception time would not have foreclosed probable cause to search the residence for the AirPods.

Finally, Appellants argue that Detective Percich omitted material information from the warrant affidavit regarding the interviewed suspect's interview. They assert that Detective Percich should have explained whether the suspect was asked about the stolen AirPods, 1022 Wylin Court, and the other suspects. Detective Percich included material information from the interview, including information that led to the recovery of the victims' property in a BP trash can and the BP surveillance footage. He also explained that two of the males were "unknown" to the interviewed suspect. Detective Percich could have included more information or even a transcript of the interview, but again, "perfection is not required." *Juneau*, 73 F.4th at 616. Appellants have not sufficiently alleged facts establishing that Detective Percich's failure to include additional details about the suspect's interview was done with reckless disregard for the truth. "[C]hallenges to warrant affidavits may not be conclusory . . . ." *Hunter v. Namanny*, 219 F.3d 825, 830 (8th Cir. 2000).

-12-

To establish the probable cause necessary to obtain a search warrant, the Fourth Amendment requires that a warrant affidavit includes factual statements that are truthful. *See Franks*, 438 U.S. at 164–65. "This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct . . . . [b]ut surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id.* at 165. Here, none of Appellants' allegations establish that Detective Percich did not believe the statements he made. Of course, hindsight disassociates 1022 Wylin Court from the armed carjacking. However, as unfortunate as this incident was for Appellants, "we do not evaluate probable cause in hindsight, based on what a search does or does not turn up." *Florida v. Harris*, 568 U.S. 237, 249 (2013).

Appellants have not sufficiently alleged that Detective Percich entertained serious doubts as to the truth or accuracy of any of the facts that he included in the warrant affidavit. Nor have they sufficiently alleged that supplementing the affidavit facts with the alleged material omissions would have prevented the St. Louis County Police Department from establishing probable cause to search 1022 Wylin Court. Thus, we conclude that Detective Percich did not commit a *Franks* violation and, accordingly, affirm the district court's dismissal of Count I.

## B. *Excessive Use of Force*

Counts II and III both allege that Detective Percich used excessive force in executing the search warrant. Specifically, in Count II, Appellants allege that "[Detective] Percich employed a SWAT team," which "was excessive because it was not reasonably necessary in order to investigate the carjacking," R. Doc. 1, ¶¶ 218–19, and in Count III allege that "[Detective] Percich's SWAT team['s] . . . conduct was excessive because it was not reasonably necessary in order to investigate the carjacking," *id.* ¶¶ 222–23. The district court dismissed Counts II and III, concluding that Detective Percich is entitled to qualified immunity. We agree.

"We analyze excessive force claims in the context of seizures under the Fourth Amendment, applying its reasonableness standard." *Brown v. City of Golden Valley*,

-13-

574 F.3d 491, 496 (8th Cir. 2009). Determining whether an officer's use of force is reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation modified). "The operative question in excessive force cases is whether the totality of the circumstances justifies a particular sort of search or seizure." *Cnty. of Los Angeles v. Mendez*, 581 U.S. 420, 427–28 (2017) (citation modified). "[T]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 428 (citation modified).

"Qualified immunity shields a public official from personal liability for constitutional violations 'if his conduct was objectively reasonable as measured by clearly established law.'" *Powell v. Basham*, 921 F.2d 165, 167 (8th Cir. 1990) (per curiam) (quoting *Darnell v. Ford*, 903 F.2d 556, 562 (8th Cir. 1990)). "To overcome qualified immunity at the motion to dismiss stage, a plaintiff 'must plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" *Watkins v. City of St. Louis*, 102 F.4th 947, 951 (8th Cir. 2024) (quoting *Dillard v. O'Kelley*, 961 F.3d 1048, 1052 (8th Cir. 2020)). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (alteration in original) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Here, Detective Percich is entitled to qualified immunity from Appellants' excessive force claims because Appellants fail to allege facts showing that Detective Percich violated their Fourth Amendment rights. "An officer's decision to authorize a SWAT team to execute a warrant can, in some cases, constitute a Fourth Amendment violation." *Z.J. by and through Jones v. Kan. City Bd. of Police Comm'rs*, 931 F.3d 672, 688 (8th Cir. 2019). However, even if we assume that it was Detective Percich's decision to authorize a SWAT team to execute the search warrant at 1022 Wylin Court, that decision was reasonable. Relying on Detective

-14-

Percich's affidavit, which complied with constitutional requirements, a neutral judge issued a no-knock search warrant for 1022 Wylin Court. At the time, Detective Percich and the judge who authorized the warrant believed that the home was connected to individuals who used firearms, at least one of which was equipped with a drum magazine, to carjack two teenagers; "fled at a high speed" in the stolen vehicle when officers attempted to initiate a felony stop; then exited the vehicle and "fled on foot," leaving the unoccupied stolen vehicle to strike a police vehicle. R. Doc. 1-4, at 2. Clearly, the suspects involved in the carjacking had already demonstrated that they were armed, dangerous, and unwilling to comply with law enforcement. Thus, it was reasonable to employ a SWAT team to execute the search warrant as a safety precaution for officers. *See Ramage v. Louisville/Jefferson Cnty. Metro Gov't*, 520 F. App'x 341, 346 (6th Cir. 2013) (unpublished) (explaining that detectives anticipated the target to be armed which "created substantial risk for the officers executing the warrant").

Furthermore, Detective Percich did not violate Appellants' Fourth Amendment rights based on the SWAT team's conduct while executing the search warrant. An official can only be held liable under § 1983 for his own misconduct. *See Z.J.*, 931 F.3d at 688. In *Z.J.*, we explained that the detectives who authorized a SWAT team to execute a search warrant "only violated the Fourth Amendment if their own actions were directly responsible for a deprivation of the plaintiff's rights. They are not automatically responsible for all of the actions of the SWAT team officers." *Id.* There, we concluded that the detectives were entitled to qualified immunity because there was no evidence suggesting they directed the SWAT team or were involved in deciding how much force the SWAT team used. *Id.* Similarly, here, Appellants have not alleged facts establishing that Detective Percich's decisions or actions produced the SWAT team's alleged use of excessive force. Detective Percich's affidavit requested and obtained authorization for the use of a no-knock warrant but the complaint insufficiently states a claim that he directed some misuse of the force the warrant authorized.

-15-

Appellants' allegations calling the SWAT team "[Detective] Percich's SWAT team," R. Doc. 1, ¶ 222, or contending that "[o]n inference, [Detective] Percich was responsible for the tactical decisions made in the course of the SWAT Team Raid," *id.* ¶ 172, are insufficient to hold him liable for the SWAT team's conduct. When reviewing a district court's dismissal of a claim, we are not required to accept conclusory allegations. *See Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999). Moreover, allegations pled on information and belief are insufficient to state a claim for relief unless "the proof supporting the allegation is within the sole possession and control of the defendant or . . . the belief is based on sufficient factual material that makes the inference of culpability plausible." *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 954 (8th Cir. 2023).

Here, Appellants' allegations "on inference" are insufficient to state a claim for relief. The proof supporting the allegations linking Detective Percich to the SWAT team's actions are not within the sole possession of St. Louis County or Detective Percich. In fact, Appellants stated that St. Louis County produced body camera footage from the SWAT team's search. Further, without additional factual material supporting Appellants' allegations, it does not appear plausible that a detective directs a SWAT team or controls how much force the SWAT team uses. We are not required to accept conclusory allegations.

Accordingly, we affirm the district court's dismissal of Counts II and III.

## C. *Unreasonable Seizure*

In Count IV, Appellants allege that Detective Percich unreasonably seized them when investigating the carjacking. Appellants assert that their seizure was not reasonably necessary to investigate the carjacking. The district court concluded otherwise and dismissed Count IV. The district court was correct.

As we explained above, Detective Percich cannot be held liable for the SWAT team's alleged constitutional violation without additional factual allegations

-16-

establishing that he was directly responsible for their actions. This includes the SWAT team's decision to seize Appellants.

Moreover, even if Detective Percich could be held liable for the SWAT team's actions, Appellants were not unconstitutionally seized. In *Michigan v. Summers*, we held that "for Fourth Amendment purposes . . . a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." 452 U.S. 692, 705 (1981) (footnotes omitted). Because the search warrant was valid, the seizure that occurred incident to its execution was not unreasonable.

Here, Appellants allege that they were detained on the sidewalk without handcuffs for 30 minutes while the SWAT team searched for contraband pursuant to a valid search warrant. Appellants do not allege any special circumstances that suggest that their seizure during the SWAT team's execution of the search warrant was unreasonable. Nor do Appellants allege that their detention was unnecessarily prolonged beyond the time required to execute the search warrant. *See Muehler v. Mena*, 544 U.S. 93, 100 (2005) (concluding that the occupant's Fourth Amendment rights were not violated when she was detained for two to three hours in handcuffs while officers executed a search warrant).

Accordingly, we affirm the district court's dismissal of Count IV.

### D. *Municipal Liability*

In Count V, Appellants allege a municipal liability claim against St. Louis County. The district court dismissed Count V, finding that the Appellants failed to allege facts that would support the existence of an unconstitutional policy or custom. We agree.

-17-

Municipal liability, also known as *Monell*[3] liability, "can be found . . . under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). To establish municipal liability, a plaintiff must sufficiently allege that a "violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Leftwich ex rel. Leftwich v. Cnty. of Dakota*, 9 F.4th 966, 972 (8th Cir. 2021) (quoting *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016)). "There must be a causal connection between the municipal policy or custom and the alleged constitutional deprivation in order to state a valid claim under § 1983." *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013). "Conclusory assertions that are unsupported by facts will not satisfy this pleading standard." *Watkins*, 102 F.4th at 953.

Here, Appellants' conclusory allegation that St. Louis County has a policy "to conduct SWAT Team Raids when not justified by the circumstances," R. Doc. 1, ¶ 204, is insufficient to state a claim for municipal liability. *See Watkins*, 102 F.4th at 954 ("Watkins's allegations are conclusory, and she does not assert specific instances or provide specific examples of inadequate officer training or supervising practices that could support an inference of an unconstitutional policy or custom."); *Calgaro v. St. Louis Cnty.*, 919 F.3d 1054, 1058 (8th Cir. 2019) ("Calgaro's conclusory assertion that the County acted based on a policy or custom is insufficient to state a claim, and the district court correctly granted judgment on the pleadings."); *Chambers v. St. Louis Cnty.*, 247 F. App'x 846, 848 (8th Cir. 2007) (unpublished per curiam) ("[W]e hold that the district court did not err in dismissing the claims against the County . . . because Chambers's speculative allegations about an apparent policy to condone and conceal police brutality were merely conclusory . . . ."). Beyond stating that the policy exists and alleging "[o]n inference" that the purpose of the policy is "to justify the existence of the unit, and to give the unit practice on the public, at the expense of the public being exposed to excessive force," R. Doc. 1, ¶ 208, Appellants do not allege any facts supporting the existence of this policy.

---

[3]*Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

-18-

For example, Appellants do not allege any instances, besides the search of their own home, where St. Louis County used a SWAT team to execute a search warrant when it was not justified by the circumstances. "Generally, an isolated incident of alleged police misconduct . . . cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983." *Ulrich*, 715 F.3d at 1061.

Accordingly, we affirm the district court's dismissal of Count V.

### E. *Sunshine Law Violation*

Lastly, in Count VI, Appellants allege that St. Louis County violated Missouri's Sunshine Law, which governs requests for public documents from a governmental body. *See* Mo. Rev. Stat. §§ 610.010 *et seq.* Appellants contend that they made a lawful Sunshine request and never received a meaningful response from St. Louis County, despite its obligations under § 610.026. After dismissing all of Appellants' federal claims, the district court declined to exercise supplemental jurisdiction over Count VI.

Under 28 U.S.C. § 1367(c)(3), federal courts have discretion to decline to exercise supplemental jurisdiction over claims arising under state law when it has dismissed all the claims over which it has original jurisdiction. Here, after dismissing the claims over which it has original jurisdiction (Counts I through V), the district court exercised its discretion to dismiss Count VI, a state law claim. Because we affirm the district court's dismissal of the federal claims, we will not disturb its declination to exercise supplemental jurisdiction over the state law claim. *See Gibson v. Weber*, 431 F.3d 339, 342 (8th Cir. 2005) (affirming dismissal of remaining state law claim after dismissing all federal claims).

Accordingly, we affirm the district court's dismissal without prejudice of Count VI.

-19-

III. *Conclusion*

For these reasons, we affirm the district court's judgment.

_____